## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

BELIEVE TGH, LLC, ET AL.                              CIVIL ACTION

versus                                               23-CV-408-SDD-RLB

POINTE COUPEE PARISH, LOUSIANA

### RULING

      This matter comes before the Court on the *Motion for Preliminary Injunction* filed by Plaintiffs, Believe TGH, LLC, Believe Therapeutic Group Home, LLC, Perpetual Properties, LLC, and Perpetual Properties II, LLC (collectively, "Plaintiffs").[1] Defendant Pointe Coupee Parish, Louisiana, (the "Defendant"), did not file an opposition to this Motion but filed a *Motion for Summary Judgment*.[2] Plaintiffs submitted an *Opposition* to Defendant's Motion and submitted a *Motion for Partial Summary Judgment*.[3] The Court considers the Motion for Preliminary Injunction first, and then considers the cross motions for summary judgment. For the reasons that follow, Plaintiff's Motion for Preliminary Injunction will be denied and the parties' dispositive motions will also be denied.

## I.    BACKGROUND AND PROCEDURAL FACTS

      Plaintiffs have operated a therapeutic group home ("TGH") for minors with disabilities in New Roads, Louisiana on Bayou Run Road (the "Bayou Run Group Home") in Pointe Coupee Parish (the "Parish") since 2019.[4] Now, Plaintiffs seek to open a second TGH in the Parish. The TGH would house ten children between the ages of 13 to 17 with

---

[1] Rec. Doc. No. 6.
[2] Rec Doc. No. 35.
[3] Rec. Doc. Nos. 38, 59.
[4] Rec. Doc. No. 6-1, p. 3.

mental and emotional disabilities. The TGH would operate in a single-family dwelling in Lettsworth, Louisiana (the "Lettsworth Group Home").[5] However, in 2021, the Parish implemented a new zoning ordinance (the "Ordinance").[6] According to the Ordinance, group homes are not allowed anywhere in the Parish.[7] The Lettsworth Group Home sits in the Rural Agricultural district of the Parish (the "R-AG").[8] While this district is primarily agricultural, single-family residences are permitted.[9] The Bayou Run Group Home is a non-conforming use in the Parish but continued operating because it was established prior to the Ordinance's effect.[10] The Ordinance defines "family" to mean "one or more person[s] related by blood within two (2) generations and one degree of marriage living together and occupying a single dwelling with single culinary facilities or a group of not more than four (4) persons living together by mutual agreement and occupying a single dwelling with [a] single culinary facility on a nonprofit cost-sharing basis."[11] Therefore, Plaintiffs contend that this definition allows for an "unlimited number of people to live together under the same roof if they are related by blood or marriage", but "it sets the maximum number of unrelated people to four."[12]

The Plaintiffs sought a variance with the Planning and Zoning Commission of the Parish to expand this definition of "family" to allow more than four unrelated individuals to live together.[13] Before the Commission, Plaintiffs argued that the variance was a reasonable accommodation under the Fair Housing Act ("FHA"), the American Disabilities

---

[5] *Id*. at p. 4.
[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *Id*. at p. 4-5.
[10] Rec. Doc. No. 6-8, Ex. F, p. 19.
[11] *Id*. at 4.
[12] Rec. Doc. No. 6, p. 4.
[13] Rec. Doc. No. 6-3.

Act ("ADA"), and the Rehabilitation Act.[14] The Commission denied Plaintiffs' request finding that there were alternative districts in the Parish that would permit the group home pending the approval of a Special Use Permit.[15] Plaintiffs appealed this denial.[16] The Parish Council then affirmed the Commission's denial.[17] Thereafter, Plaintiffs brought suit alleging Defendant violated the FHA, the ADA, the Rehabilitation Act, the Louisiana Equal Housing Opportunity Act, and the Louisiana public accommodations law.[18]

Plaintiffs filed a Motion for Preliminary Injunction pursuant to Title II of the ADA, the FHA, and Section 504 of the Rehabilitation Act.[19] Defendant did not submit an opposition to the injunction but filed a Motion for Summary Judgment on.[20] Plaintiffs filed a Motion for Partial Summary Judgment on and an Opposition to Defendant's Motion.[21]

## II.    MOTION FOR PRELIMINARY INJUNCTION

### A.  Law

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."[22] The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court.[23] At all times, the burden of

---

[14] Rec. Doc. No. 6-1, p. 6.

[15] Defendant defines this term in Rec. Doc. 35-3, Exhibit 3 of their motion. A "special use permit" is a use, structure, or continuance of a non-conforming condition permitted in a particular zoning district subject to any reasonable conditions established by the parish council to mitigate any adverse impacts associated with the approval.

[16] *Id.* at p. 7-8.

[17] *Id.*

[18] Rec. Doc. Nos. 1, 45.

[19] Rec. Doc. No. 6.

[20] Rec. Doc. No. 35.

[21] Rec. Doc. Nos. 38, 59.

[22] *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted); *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985) ("[t]he decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule").

[23] *See Allied Mlttg. Grp., Inc.*, 878 F.2d at 809.

persuasion remains with Plaintiffs as to each of the four elements. Specifically, the Plaintiffs must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs the harm that will result to the nonmovant if the injunction is granted; and (4) the injunction will not disserve the public interest.[24] If the Plaintiffs fail to meet this burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction.[25]

As a general rule, preliminary injunctions are designed to preserve the status quo prior to the Court's consideration of a case on its merits, and they are not intended as a substitute for relief on the merits of the case. Otherwise, the normal procedures of litigation would be circumvented by trying a case on the merits through a motion for injunctive relief. Plaintiffs seek an injunction to enjoin the Defendant from enforcing the "family" definition under the Ordinance and to order Defendant to grant a reasonable accommodation.[26]

### B. Analysis

Plaintiffs' claims arise under the FHA, the ADA, and the Rehabilitation Act. The FHA was intended to eliminate housing discrimination in the United States. Under the FHA, unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."[27] This Court

---

[24] *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).
[25] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).
[26] Rec. Doc. No. 6.
[27] *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 907 M.D. La. 2017) (citing 42 U.S.C. § 3604(F)(3)(B)).

has previously held that, because the "relevant portions" of the FHA, ADA, and the Rehabilitation Act "'offer the same guarantee that a covered entity…must provide reasonable accommodations…to people with disabilities', 'analysis of a reasonable accommodation claim under the three statutes is treated the same.'"[28] Therefore, the Court addresses these claims collectively. To warrant a preliminary injunction, first Plaintiffs are required to show a substantial likelihood of success on the merits. For these claims, Plaintiffs will have to prove that: (1) the prospective residents are handicapped or disabled as the statutes define those terms; (2) Plaintiffs requested an accommodation and Defendant refused that request; (3) the requested accommodation was reasonable; and (4) the requested accommodation "may be necessary" to afford the prospective residents with "equal opportunity to use and enjoy the dwelling."[29]

Plaintiffs move for a preliminary injunction without any opposition from Defendant. The Court does not consider the summary judgment evidence offered by Defendant to analyze whether an injunction is warranted. Moreover, the Court does not consider any evidence offered by Plaintiffs in their Motion for Summary Judgment to substantiate Plaintiffs' preliminary injunction evidence.

Even absent an opposition from Defendant, however, the Court finds that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits because there is insufficient evidence with respect to the reasonableness and necessary prongs of Plaintiffs' claims. In *Groome Resources, Ltd., L.L.C. v. Parish of Jefferson*, the Eastern

---

[28] *Id*. (citing *Logan v. Matveevskii*, 57 F.Supp.3d 234, 253 (S.D.N.Y. 2014) (citation omitted)).

[29] *Id*. (citing *Oxford House, Inc. v. City of Baton Rouge*, 932 F.Supp.2d 683, 687–94 (M.D. La. 2013) (quoting 42 U.S.C. § 3604(f)(3)(B)).

District of Louisiana addressed a special zoning waiver for a group home.[30] There, the court found that the requested accommodation was reasonable and necessary because "[t]he other homes operated by [the plaintiff] ha[d] been well received by the residential neighbors," and "there [was] no evidence that th[e] proposed group home with five Alzheimer's patients would cause any problems…or impact the safety, welfare or character of the neighborhood."[31] Further, the court explained "the same residential zoning permits small homes, businesses, schools, and day care centers, all of which cause more congestion and traffic problems."[32] In this case, Plaintiffs offer the transcripts from the Planning and Zoning Commission Hearing and Parish Council Meeting discussing Plaintiffs' accommodation request and Plaintiffs' appeal of the accommodation denial.[33] The transcripts do not indicate that the home would be well received by the community. Plaintiffs confirmed that there had been behavioral issues at the Bayou Run Group Home leading to residents being transferred to other facilities, and Commission members expressed concern for the elderly individuals living in the same community as the proposed Lettsworth Group Home.[34] While the considerations for reasonableness made in *Groome* are not binding, they are persuasive—the evidence submitted does not demonstrate that Plaintiff is substantially likely to prove that the requested accommodation is reasonable to warrant the extraordinary relief of injunction.

Additionally, while Plaintiffs assert that the district permits uses such as "home businesses, professional offices, and day cares,"[35] Plaintiffs did not submit any evidence

---

[30] 52 F. Supp. 2d 721 (E.D. La. 1999), aff'd, 234 F.3d 192 (5th Cir. 2000).
[31] *Id*. at 725.
[32] *Id*.
[33] Rec. Doc. Nos. 6-4, Ex. B, 6-8, Ex. F.
[34] Rec. Doc. No. 6-8, p. 11.
[35] Rec. Doc. No. 6-1, p. 5.

that shows the Court the permitted and restricted uses in the district to support this assertion.[36]

In considering the necessary prong of their claims, Plaintiffs can use a group home's financial viability to show the accommodation is necessary.[37] Plaintiffs provided the Court with the profit and loss statements of the Bayou Run Group Home from January 2020 through December 2022.[38] The Court considers the historical financials of the Bayou Run Group Home probative of the anticipated financial performance of the proposed Lettsworth Group Home. The homes are located in the same parish and are presumably going to be operated in the same manner. In their brief, Plaintiffs provide a chart illustrating the anticipated profit and losses if the Bayou Run Group Home operated under its highest reimbursement rate from 2020 with only four residents.[39] Plaintiffs then assert that "[t]he accommodation is 'necessary' b/c it is not financially viable without ten residents."[40]

While the Court finds the evidence supports the assertion that four residents would not make the home financially viable, there is no evidence in the record that informs the Court whether (1) the Bayou Run Group Home consistently hosted ten residents between January 2020 and December 2022 or (2) that during any of the statement periods ten residents lived at the Bayou Run Group Home. Thus, there is no evidence available to

---

[36] The Court notes that Plaintiff cites the Ordinance when making this assertion but does not offer the Ordinance into evidence for its Motion for Preliminary Injunction. The Ordinance is only offered by Defendant in its Motion for Summary Judgment.
[37] *Harmony Haus Westlake, L.L.C. v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 467 (5th Cir. 2021) (citing *Elderhaven, Inc.*, 98 F.3d at 179).
[38] Rec. Doc. No. 6-11, Ex. I.
[39] Rec. Doc. No. 6-1, p. 17.
[40] *Id*.

the Court to determine whether financial viability can be reached with ten residents in the Lettsworth Group Home.

Plaintiffs request that the Court limit its consideration of financial viability to the "proposed alternative" such that the Court only compares viability of what is permitted, which is four residents, versus the requested accommodation, which is ten residents.[41] However, the evidence is insufficient to make this comparison and thus fails to satisfy Plaintiffs' burden of showing that they likely can meet the necessity prong of their claim.

As mentioned, a preliminary injunction is a "drastic remedy." Plaintiffs must overcome a high burden to warrant these measures. The Court finds that Plaintiffs have not met this burden because they have not shown a substantial likelihood of success on the merits. Therefore, Plaintiffs' Motion for Preliminary Injunction is denied.

## III.    MOTIONS FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

Summary Judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[42] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[43] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,'

---

[41] *Id.*

[42] *Basil v. Dow Chem. Co.*, No. CV 19-00004, 2020 WL 1964155, *1 (M.D. La. Apr. 23, 2020).

[43] *Id.*

but need not negate the elements of the nonmovant's case."[44] If the moving party "fails to meet this initial burden, the summary judgment must be denied, regardless of the nonmovant's response."[45]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubts as to the facts, or a scintilla of evidence. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[46] The Court will not, "in the absence of any proof assume that the nonmoving party could or would prove the necessary facts."[47] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.

### B. Application to Plaintiffs' Claims under the FHA, the ADA, and the Rehabilitation Act

The Court now turns to the cross-motions for summary judgment. As one federal district court stated, "[c]oncurrent resolution of cross-motions for summary judgment can present a formidable task."[48] "Cross-motions [for summary judgment] must be considered separately and should not be interpreted necessarily to mean that judgment should be

---

[44] *Id*.
[45] *Id*.
[46] *Id*. at *2.
[47] *Id*.
[48] *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D. Pa. 2004); *see also* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998).

entered on one of them[.]"[49] This is because "each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material facts exists and that the movant is entitled to a judgment as a matter of law."[50]

> The fact that one party fails to satisfy the burden on [their] own Rule 56 motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment on the other motion. The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine dispute of material fact. But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[51]

With these standards in mind, the Court turns to each individual motion. Defendant moves for summary judgment arguing, there is no factual dispute that Plaintiffs failed to provide Defendant with a valid accommodation request as required under the FHA, the ADA, and the Rehabilitation Act.[52] Plaintiffs move for partial summary judgment arguing there is no factual dispute that Defendant violated the FHA, the ADA, and the Rehabilitation Act by denying Plaintiffs' variance request and failing to accommodate the prospective residents of the Lettsworth Group Home based on their disabilities.[53]

As set forth above, to establish a claim under the FHA, the ADA, and the Rehabilitation Act, Plaintiffs must prove that: (1) the prospective residents are handicapped or disabled as the statute(s) define those terms; (2) Plaintiffs requested an accommodation and Defendant refused that request; (3) the requested accommodation was reasonable; and (4) the requested accommodation "may be necessary" to afford the

---

[49] 10A Mary Kay Kane, Federal Practice and Procedure (Wight & Miller) § 2720 (4th ed. 2022).
[50] *Id.*
[51] *Id.*
[52] Rec. Doc. No. 35-1.
[53] Rec. Doc. No. 38-1.

prospective residents with "equal opportunity to use and enjoy the dwelling."[54] For the purposes of summary judgment, Defendant must show that, even when viewing the facts in favor of the Plaintiffs, Plaintiffs cannot satisfy one of these elements and, therefore, Defendant is entitled to judgment as a matter of law. In contrast, Plaintiffs must show that, even when viewing the facts in favor of Defendant, Plaintiffs have established each of these elements and, therefore, they are entitled to judgment as a matter of law.

### 1) Prospective Residents' Status as Handicapped and/or Disabled

The FHA and the ADA both define "handicapped" or "disabled" as (1) a physical and/or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having an impairment.[55] The Rehabilitation Act also employs this definition for the purposes of establishing a reasonable accommodation claim.[56] "Major life activities" used in this definition can include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[57]

The Court finds that there is no factual dispute concerning whether the prospective residents are "handicapped" or "disabled" within the meaning under the FHA, the ADA, and the Rehabilitation Act. Plaintiffs intend for the Lettsworth Group Home to be designated as a Therapeutic Group Home or a "TGH." Under the Louisiana Administrative Code, a TGH is defined as a "facility that provides community-based residential services

---

[54] *Oxford House, Inc.,* 266 F. Supp. 3d at 907.
[55] *Id*. at 910.
[56] *See Id*. ("[t]he Rehabilitation Act, for purposes of establishing a reasonable accommodation claim, utilizes the definition of "disability" that is promulgated under the ADA." (citing 29 U.S.C. § 705(9)(B))).
[57] *Id.*

to clients under the age of 21 in a home-like setting...under the supervision and oversight

of a psychiatrist or psychologist."[58] "The purpose of a TGH is to provide community-based

services in a secured, homelike environment to clients...who are determined to need

psychiatric or psychological services."[59] Services provided to residents can include

behavioral health services, medication management, assistance with independent living

skills, and rehabilitative services.[60] The residents are provided with a structured and

supportive living environment for 24 hours per day and seven days per week.[61] According

to the Plaintiffs, the prospective residents suffer from a range of disabilities including post-

traumatic stress disorder, depression, developmental delays, and autism.[62] Defendant

has not brought forth any summary judgment evidence to contest this. Thus, the record

clearly shows prospective residents of the Lettsworth Group Home are "disabled" or

"handicapped" as defined by the statutes.

### 2) Plaintiffs' Accommodation Request and Defendant's Refusal of the Accommodation

Plaintiffs also must show that they requested an accommodation and Defendant

refused the request. Defendant contends that summary judgment is warranted because

Plaintiffs failed to request an accommodation.

Defendant argues that instead of submitting a variance request, Plaintiffs were

required to submit a valid application for a "Special Use Permit."[63] The Ordinance defines

a "Special Use Permit" as a "use, structure or continuance of a non-conforming condition

permitted in a particular zoning district subject to any reasonable conditions established

---

[58] La. Admin. Code tit. 48, § I-6203.
[59] La. Admin. Code tit. 48, § I-6201 (B).
[60] La. Admin. Code tit. 48, § I-6201 (E).
[61] La. Admin. Code tit. 48, § I-6201 (B).
[62] Rec. Doc. No. 39-5, Ex. K, p. 9.
[63] Rec. Doc. No. 35-1, p. 6.

by the parish council to mitigate any adverse impacts associated with the approval."[64] The Ordinance lists permitted and restricted uses in the various districts.[65] Some uses are wholly permitted, permitted with a Special Use Permit, or wholly restricted.[66] Congregate housing is one of the uses that is permitted in two districts with a Special Use Permit.[67] Defendant argues that Plaintiffs were required to apply for a Special Use Permit in a district that allows for congregate housing. So, because they did not follow this procedure, they did not submit a valid accommodation request.

The Court rejects Defendant's argument. The Lettsworth Group Home is located in the R-AG district. According to the Ordinance, Congregate housing is wholly restricted in this district.[68] The Plaintiffs need not embark on a futile process.

The Ordinance also defines a "variance" as "permission to depart from the provisions of this article relating to setback, side yards, frontage requirements, and lot size, but not involving actual use."[69] Plaintiffs requested a variance. Given this definition, the Court finds that this was not the proper procedure either because Plaintiffs were seeking an accommodation involving "actual use." The non-conforming use sought by Plaintiffs does not fall under either the special use permit or variance process. Furthermore, the record does not indicate that there is a third, alternative method that would properly address Plaintiffs' request.

On July 19, 2022, Plaintiffs' counsel emailed the Parish and counsel for the Parish, stating:

---

[64] Rec. Doc. No. 35-3, p. 7.
[65] *Id*. at p. 8-13.
[66] *Id*.
[67] *Id*. at p. 9.
[68] *Id*.
[69] *Id*. at p. 7.

We are open to whatever accommodation that will allow my client to open its TGH at that location. Whether that comes in the form of a rezoning or variance, we have no preference. It would help us give you an answer on the accommodation, and eliminate confusion, if you could inform me what is preventing my client from opening in the present location.

Counsel for the Parish in response wrote:

… [Y]our client may seek a variance to allow for the housing of unrelated persons in excess of the restriction contained in the definition of "family", which is not more than 4 unrelated persons. That application will be [sic] considered…. Alternatively, your client might seek to operate this business venture in an existing MU or PU zone, where housing is an allowable use, upon issuance of a special use permit.

Please clarify whether your client wishes to move forward with a variance request.[70]

Plaintiffs' counsel then confirmed they would proceed with a variance request.[71] The Court finds that the Ordinance does not provide a process for requesting a reasonable accommodation under these circumstances. Nevertheless, Plaintiffs requested an accommodation in their email correspondence with the Parish. This request was then refused when the Planning and Zoning Commission denied the variance.

The summary judgment evidence shows that Plaintiffs requested an accommodation. Therefore, Defendant's Motion does not succeed on the grounds that Plaintiffs failed to request an accommodation.

### 3) Reasonableness of the Accommodation

Plaintiffs must show that the accommodation is reasonable such that it will "not cause any undue hardship or fiscal or administrative burdens on the [government entity] or does not undermine the basic purpose that the [challenged regulation] seeks to

---

[70] Rec. Doc. No. 59-3, Ex. W, p. 2-3.
[71] *Id*. at p. 4.

achieve."[72] While there is no stringent list of factors the Court is required to consider when determining reasonableness, other courts in this Circuit have considered the following: (1) how the accommodation is received by community; (2) whether the accommodation may cause obstructions or increased traffic in the area; (3) other uses that are permitted in the zone and how the accommodation compares to those permitted uses; and (4) the economic impact associated with group living arrangements.[73]

When considering the first factor, there are issues of fact regarding whether the accommodation will be well received by the Parish. On September 13, 2022, the Parish Council held a meeting to discuss Plaintiffs' appeal to the variance denial.[74] At this meeting, a councilman asked if the Bayou Run Group Home experienced burglaries.[75] Plaintiffs' counsel confirmed vehicle burglaries occurred in the past, but the burglaries were not committed by any of the tenants.[76] Additionally, Plaintiffs' counsel informed the Council of some "behavioral issues" amongst the residents at the Bayou Run Group Home.[77] Plaintiffs' counsel explained that when such issues persist with a resident, the

---

[72] *Oxford House, Inc.*, 266 F. Supp. 3d at 912 (citing *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 692 (M.D. La. 2013) (quoting *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179, 1186 (E.D.N.Y. 1993))).

[73] See *Oxford House, Inc.*, 266 F. Supp. 3d at 916 (noting that the accommodation would not cause a danger to the community); *See also Groome Res., Ltd., L.L.C.*, 52 F. Supp. 2d 721 at 724-725 (noting that the accommodation would not impact the "health, safety, welfare or character of the neighborhood", the resident zoning permitted uses that caused more congestion than the accommodation would, and the accommodation would be "well received by their residential neighbors"); *See also AngeliCare, LLC v. St. Bernard Par.*, No. CV 17-7360, 2017 WL 11724648 at *3 (E.D. La. Sept. 8, 2017) (finding plaintiffs did not show a substantial likelihood of success on the merits in part because the group homes they wanted to open "appear[ed] to be wholly inconsistent with the other properties in the neighborhood"); *See also Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 693 (finding that the Oxford Houses seeking an accommodation were "similar to the uses already permitted by the zoning code"); *Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 179 (5th Cir. 1996) ("[w]e recognize that the economics of group living arrangements often require a critical mass of residents in order to make feasible the type of alternative living arrangements that the Fair Housing Act was designed to encourage").

[74] Rec. Doc. No. 39-5, Ex. K.

[75] *Id*. at p. 10.

[76] *Id*.

[77] *Id*. at p. 11.

resident is moved to a different facility.[78] Another councilman stated that one of the neighbors of the Bayou Run Group Home "[does not] even want to come out [of] her house" and that "Police be at [the Bayou Run Group Home] a lot."[79] Council members also mentioned that elderly individuals live in the neighborhood of the proposed Lettsworth Group Home. One member exclaimed, "[l]ove kids, but sometimes you got to think about the older people instead of a dollar bill." [80]

On the other hand, Plaintiffs' counsel noted to the Commission that neighbors of the Bayou Run Group Home have cooked for the residents and allow the residents to cut their grass.[81] Further, Plaintiffs' counsel stated the residents and the neighbors "get along reasonably well."[82]  The Court finds that, while some of the neighbors and community members have no concerns with the Bayou Run Group Home, whether a second home will be well received in a different community in the Parish is a genuinely disputed material fact.

The Court finds, however, that the evidence does not demonstrate a factual dispute with respect to the accommodation's impact on obstruction or traffic in the Parish. The records suggests that there is one registered nurse and likely one to two staff members, either a clinical director or house manager, who will commute to the Lettsworth Group Home for services and to ensure the home is under supervision for 24 hours, seven days per week.[83] These appear to be the only non-residents who will be continuously commuting to the home. There is also no summary judgment evidence to show that the

---

[78] *Id*.
[79] *Id*. at p. 11-12.
[80] *Id*. at p. 13.
[81] *Id*. at p. 5; Rec. Doc. No. 39-1, p. 30.
[82] *Id*.
[83] Rec. Doc. No. 39-1, Ex. G, p. 8.

residents will have their own cars or will be traveling to and from the home often. At most, the evidence demonstrates that staff may transport residents for activities such as going to the park or going to the movies.[84] Thus, the low likelihood of the accommodation obstructing the flow of traffic is not reasonably in dispute at this stage.

The Court has also reviewed the permitted and restricted uses in the R-AG district. According to the Ordinance, several agricultural uses are permitted in this district as well as single-family residences, schools, churches, and food sale entities.[85] Day care centers, preschools, bed and breakfasts, and restaurants are permitted but only with a Special Use Permit.[86] Fast food, university or college facilities, dormitories, sorority or fraternity residences, congregate housing, and retail sale entities are not permitted in the district.[87] In *Groome*, the Eastern District of Louisiana compared the permitted uses in the zoning district to the proposed group home seeking a variance accommodation.[88] The property at issue was located in a district that permitted small businesses, schools, and day care centers.[89] The Eastern District found that the accommodation was reasonable in part because the zoning district permitted uses that caused much more congestion and traffic than the property would.[90] The Fifth Circuit affirmed this decision. Similarly in *Oxford House*, the Court found that the neighboring existing uses (college student housing) was similar to the group home that was being proposed.[91]

---

[84] *Id.*
[85] Rec. Doc. No. 39-3, p. 8-13.
[86] *Id.* at p. 9, 12.
[87] *Id.* at p. 9-10, 12.
[88] *Groome Res., Ltd., L.L.C.*, 52 F. Supp. 2d 721, 722.
[89] *Id.* at 725.
[90] *Id.*
[91] *Oxford House, Inc.,* 932 F. Supp. 2d 683, 693.

But the facts here differ from *Groome* and *Oxford House*. The Lettsworth Group Home is in a district that is overwhelmingly agricultural and restricts many uses.[92] In fact, the proposed group home appears to be more akin to the uses that are wholly restricted, such as the dormitories, congregate housing, and sorority and fraternity residences.

Finally, the Court considered the projected financials of the proposed Lettsworth Group Home. The Fifth Circuit has recognized that "the economics of group living arrangements often require a critical mass of residents in order to make feasible the type of alternative living arrangements that the Fair Housing Act was designed to encourage."[93]

Plaintiffs rely on the profit and loss statements for the Bayou Run Group Home from January 2020 through December 2022 in support their partial motion.[94] The statements show that, at most, the Bayou Run Group Home generated a net income of $29,949.59 between January and March 2021.[95] According to Plaintiffs' interrogatory answers submitted by Defendant, the Bayou Run Group Home was at its highest capacity during this period with eleven residents in January, ten residents in February, and nine residents in March.[96] In seven of the other twelve statement periods, the Bayou Run Group Home either operated at a loss or only made a few thousand dollars.[97] Furthermore, while the total income of the Bayou Run Group Home has on average

---

[92] Rec. Doc. No. 39-3, p. 8-13.
[93] *Elderhaven, Inc. v. City of Lubbock, Tex.,* 98 F.3d 175, 179 (5th Cir. 1996).
[94] Rec. Doc. No. 40-2, Ex. N. Each statement shows the profit and loss margins over periods of three months, for a total of twelve statements.
[95] *Id*. at p. 5.
[96] Rec. Doc. No. 35-7, p. 2.
[97] Rec. Doc. No. 40-2, Ex. N.

increased over this two-year span, the expenses associated with the home have increased on a similar trajectory.[98]

The financials demonstrate that the proposed Lettsworth Group Home would have to be operated near capacity to be economically feasible. Nonetheless, even though the evidence shows that, from a financial standpoint, congregate living may be a reasonable accommodation, there remain issues of fact about whether the proposed Lettsworth Group Home will undermine the basic purposes that the subject Ordinance seeks to achieve.

### 4)  Necessity for the Accommodation

Because there are genuine issues of material fact on the reasonableness element, the Court need not address the last element of Plaintiffs' claims, which requires Plaintiffs to show the requested accommodation may be necessary. However, the Court will do so for completeness and finds that there are factual disputes on this element.

The Fifth Circuit has held that, to establish that an accommodation is necessary, the accommodation cannot merely "[be] preferable to an alternative; [the accommodation] must be essential."[99] Plaintiffs can show an accommodation is necessary based on financial viability.[100] As mentioned above, the record suggests that the proposed Lettsworth Group Home will not be financially viable with only four residents. Therefore, an accommodation, in the form of relief from the Ordinance, would be necessary Notwithstanding this, a dispute still exists regarding whether the accommodation is "essential."

---

[98] *Id*.
[99] *Harmony Haus Westlake, L.L.C. v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 465 (5th Cir. 2021).
[100] *Id*. at 467 (citing *Elderhaven, Inc*., 98 F.3d at 179).

The Bayou Run Group Home operates as a non-conforming use in the Parish because it was established before the Ordinance went into effect.[101] However, the home's owner admitted in his deposition that the home has been operating under capacity for the past year.[102] The fact that the Bayou Run Group Home has not operated at capacity raises a question of the necessity for a second group home in the Parish. And, while this Court has explained a "handicapped individual must be allowed to enjoy a particular dwelling, not just some dwelling somewhere in the town,"[103] the record informs the Court that the state assigns residents to a TGH, and the residents do not have a true "choice."[104] Moreover, children come from all parts of the state to live in a TGH. Therefore, residents are not necessarily assigned to a TGH located in their parish or community.[105] Consequently, there is no summary judgment evidence that indicates to the Court that any prospective resident is from Pointe Coupee Parish and would likely be placed at the Lettsworth Group Home if the Ordinance variance or waiver were granted. The Court finds that a reasonable jury could consider these facts and find in favor of either party on this element. Therefore, a genuine issue of material fact still exists regarding whether the accommodation is necessary.

In short, when viewing the facts in a light that favors the nonmoving party, genuinely disputed issues of material facts exist with respect to the reasonableness and necessity elements of Plaintiffs' claims. Therefore, both motions for summary judgment are denied.

---

[101] Rec. Doc. No. 39-5, p. 19.
[102] Rec. Doc. No. 35-8, p. 2.
[103] *Oxford House, Inc.*, 932 F. Supp. 2d 683, 694 (citing *Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179, n. 10 (E.D.N.Y. 1993) (citation omitted)).
[104] Rec. Doc. No. 35-8, p. 3.
[105] *Id*. at p. 2.

## IV.    CONCLUSION

The Court finds that Plaintiffs failed to meet their burden to warrant a preliminary injunction. Additionally, both parties have failed to meet their burdens to warrant granting summary judgment.

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction[106] is hereby **DENIED,** Defendant's Motion for Summary Judgment[107] is hereby **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment[108] is hereby **DENIED.**


Signed in Baton Rouge, Louisiana, on this __19th__ Day, December, 2023.

_Shelly D. Dick_
_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[106] Rec. Doc. No. 6.
[107] Rec. Doc. No. 35.
[108] Rec. Doc. No. 38.