**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

BELIEVE TGH, LLC, ET AL.					CIVIL ACTION

versus

											23-408-SDD-RLB

POINTE COUPEE PARISH

**RULING**

This matter comes before the Court on the Motion for Reconsideration[1] filed by Plaintiffs, Believe TGH, LLC, Believe Therapeutic Group Home, LLC, Perpetual Properties, LLC, and Perpetual Properties II, LLC, (collectively, the "Plaintiffs"). Defendant, Pointe Coupee Parish, Louisiana (the "Parish" or "Defendant") filed an Opposition.[2] For the following reasons, the Court denies the Motion for Reconsideration of its Ruling denying Plaintiffs' Motion for Partial Summary Judgment.

**I.	BACKGROUND AND PROCEDURAL FACTS**

Plaintiffs operate a therapeutic group home ("TGH") for minors with disabilities on Bayou Run Road (the "Bayou Run Home") in Pointe Coupee Parish (the "Parish").[3] In 2021, the Parish implemented a new zoning ordinance (the "Ordinance"), which prohibits group homes in the Parish.[4] The Bayou Run Home is a non-conforming use in the Parish; it continued operating because it was established prior to the Ordinance's effect.[5] This Ordinance defines "family" to mean "one or more person[s] related by blood within two (2) generations and one degree of marriage living together and occupying a single dwelling

---

[1] Rec. Doc. 63.
[2] Rec. Doc. 64.
[3] Rec. Doc. 6-1, pp. 3–4.
[4] *Id.* at p. 4.
[5] Rec. Doc. 6-8, p. 19.

with single culinary facilities or a group of not more than four (4) persons living together by mutual agreement and occupying a single dwelling with [a] single culinary facility on a nonprofit cost-sharing basis."[6] Therefore, single-family dwellings can be residences for either an unlimited amount of blood relatives or four unrelated individuals.

The instant dispute arose because Plaintiffs seek to open a second TGH in the Parish. This second TGH would operate in a single-family dwelling in Lettsworth, Louisiana (the "Lettsworth Home").[7] The Lettsworth Home sits in the Rural Agricultural district of the Parish (the "RA-G").[8] This district is primarily agricultural but single-family residences are permitted.[9] As a result, Plaintiffs sought a variance with the Parish's Planning and Zoning Commission to expand their definition of "family" to allow more than four unrelated individuals to live together.[10] As part of their variance request, Plaintiffs argued that a variance was a reasonable accommodation under the Fair Housing Act ("FHA"), the American Disabilities Act ("ADA"), and the Rehabilitation Act.[11] The Commission denied Plaintiffs' request and Plaintiffs appealed.[12] The Parish Council then affirmed the denial.[13] Consequently, Plaintiffs sued Defendant alleging the Parish violated the FHA, the ADA, the Rehabilitation Act, the Louisiana Equal Housing Opportunity Act, and the Louisiana public accommodations law.[14]

---

[6] Rec. Doc. 6-1, p. 4.
[7] *Id.* at pp. 3–4.
[8] *Id.* at p. 4.
[9] *Id.* at pp. 4–5.
[10] Rec. Doc. 6-3.
[11] Rec. Doc. 6-1, pp. 5–6.
[12] *Id.* at pp. 7–8.
[13] *Id.* at p. 10.
[14] Rec. Docs. 1, 45.

On June 6, 2023, Plaintiffs moved for a preliminary injunction pursuant to Title II of the ADA, the FHA, and Section 504 of the Rehabilitation Act.[15] On September 4, 2023, Defendant moved for summary judgment.[16] Plaintiffs filed a cross motion for partial summary judgment on September 5th and filed an opposition to Defendant's motion on September 25th.[17]

The Court denied the preliminary injunction and denied the motions for summary judgment.[18] Now, Plaintiffs request that the Court reconsider its denial of Plaintiffs' motion for partial summary judgment.

## II. MOTION FOR RECONSIDERATION

### A. Preliminary Matters

In the instant motion, Plaintiffs repeatedly cite materials they submitted via their Motion for Leave to File Supplemental Dispositive Motion and Statement of Material Facts. However, as Plaintiffs correctly point out, the Court did not consider these materials when deciding on the cross motions for summary judgment.[19] The Court will also not consider these materials for the purposes of reconsideration. The Scheduling Order was issued on June 21, 2023.[20] The deadline to file dispositive motions was September 4, 2023.[21] Defendant timely moved for summary judgment.[22] Plaintiffs failed to meet this deadline, filing an out-of-time Motion for an Extension Time to File Dispositive Motions and an out-of-time Motion for Partial Summary Judgment on September 5, 2023.[23] On

---

[15] Rec. Doc. 6.
[16] Rec. Doc. 35.
[17] Rec. Docs. 38, 59.
[18] Rec. Doc. 62.
[19] Rec. Doc. 63-1, p. 2, n.2.
[20] Rec. Doc. 13.
[21] *Id*.
[22] Rec. Doc. 35.
[23] Rec. Docs. 37, 38.

September 7th, Plaintiffs moved for leave to file a supplemental dispositive motion and statement of material facts.[24] The next day, Defendant moved to dismiss Plaintiffs' summary judgment motion as untimely.[25] The motion for an extension of time was referred to the Magistrate Judge and was denied as moot because Plaintiffs filed their dispositive motion on September 5th.[26] The Court then denied Defendant's Motion to Dismiss solely on the grounds that the deadline fell on a federal holiday.[27] Notably, the Court ascertained that Plaintiffs' counsel "ha[d] exhibited a lack of diligence throughout this proceeding, missing other deadlines, deficient filings, and incorrect filings."[28] The Court continued, "Plaintiffs' counsel's personal responsibilities and circumstances do not excuse his obligation to abide by the Court's deadlines, or at the very least, seek relief from the deadline before it passes. While the Court will give leniency to Plaintiffs' counsel with respect to this deadline under these particular circumstances, such leniency in the future should not be expected."[29]

Considering the foregoing history, the Court will not consider the motion for leave and the motion is denied. Plaintiffs moved for an extension of time because Plaintiffs did not receive Defendant's deposition transcript by the dispositive motion deadline.[30] This is irrelevant, however, because Plaintiffs had nearly two and a half months to timely depose the Parish. Moreover, Plaintiffs do not suggest that this delay was caused by the Defendant or difficulties in scheduling the deposition. The supplemental motion does not merely seek to supplement the summary judgment record with the deposition transcript;

---

[24] Rec. Doc. 50.
[25] Rec. Doc. 51.
[26] Rec. Doc. 48.
[27] Rec. Doc. 61, p. 2.
[28] *Id*.
[29] *Id.* at pp. 2–3.
[30] Rec. Doc. 50-1, p. 1.

it is a revised motion for partial summary judgment which adds citations, adds additional exhibits, and sets forth new facts.[31] Considering the lack of punctuality repeatedly displayed by Plaintiffs' counsel, it would be highly prejudicial to Defendant for the Court to consider a revised motion for partial summary judgment that was submitted days after the deadline. It is one thing for the Court to consider the one day-late motion for partial summary judgment when the deadline fell on a holiday, it is another thing for the Court to consider this revised motion, new facts, and new exhibits that were submitted days after the deadline. This distinction is doubly warranted when the motion for an extension of time to file the dispositive motion was also untimely.[32]

Plaintiffs' Motion for Leave to File Two Exhibits Conventionally[33] is also denied. Plaintiffs represent that the two exhibits are audio recordings of the August 18, 2022 Parish Planning and Zoning Commission Meeting and September 13, 2022 Parish Council Meeting.[34] Again, Defendant moved for summary judgment on September 4, 2023.[35] Therefore, Plaintiffs' deadline to file an opposition was September 25, 2023.[36] Plaintiffs timely filed their opposition and some of their exhibits but did not seek to conventionally file these recordings until September 27, 2023.[37] For reasons already stated, this motion is denied.

---

[31] *Id.* at pp. 2–3.
[32] The Motion for Extension of Time to File Dispositive Motions was filed on September 5, 2023, a day after the Court's dispositive motion deadline. Rec. Doc. 37.
[33] Rec. Doc. 60.
[34] Rec. Doc. 60-1, p. 1.
[35] Rec. Doc. 35.
[36] Local Rule 7(F).
[37] Rec. Doc. 60.

### B. Requirements for a Motion to Reconsider

When a motion for reconsideration "'calls into question the correctness' of the judgment," the Court considers it under Fed. R. Civ. P. 59(e).[38] "Rule 59(e) motions serve 'the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"[39] "'Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'"[40] "Accordingly, a motion for reconsideration 'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'"[41] "Courts have considerable discretion in deciding whether to grant such a motion."[42]

Plaintiffs move the Court to reconsider their Motion for Partial Summary Judgment. To prevail on summary judgment, Plaintiffs had to offer undisputed summary judgment evidence which proved the following: (1) the prospective residents are handicapped or disabled as the statute(s) define those terms; (2) Plaintiffs requested an accommodation and Defendant refused that request; (3) the requested accommodation was reasonable and defendant refused that request; and (4) the requested accommodation "may be necessary to afford" the prospective residents with "equal opportunity to use and enjoy the dwelling."[43] The Court found genuine disputes of material facts regarding the last two prongs.[44] Plaintiffs move the Court to reconsider these findings only.[45]

---

[38] *Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)).
[39] *Id.* (quoting *Templet*, 367 F.3d at 479).
[40] *Id.*
[41] *Id.*
[42] *Calloway v. Pinkey,* 2024 WL 1237056, at *1 (M.D. La. Mar. 14, 2024) (citing *Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993)).
[43] *Oxford House, Inc. v. Browning,* 266 F. Supp. 3d 896, 907 (M.D. La. 2017).
[44] Rec. Doc. 62, p. 20.
[45] *See* Rec. Doc. 63-1, p. 2, n.1 (Plaintiffs represent that the first two legal issues are not subject to their motion and request that the Court not reconsider these rulings).

### C. Analysis

### 1. Reasonableness of the Accommodation

Plaintiffs argue that they are entitled to summary judgment on the reasonableness prong for several reasons.[46] First, they argue the Court erred by considering community opposition under the reasonableness analysis.[47] Plaintiffs rely on *Oxford House, Inc. v. City of Baton Rouge*.[48] In that case, this Court considered neighbors' complaints about "too many people living [in the group home]," increased traffic and vehicles, and general complaints about the home being illegal and "ruining the older neighborhoods of Baton Rouge."[49] The distinguisher between this case and here, however, is that in *Oxford House*, the Court found that the property next to the group home housed colleges students, and neighbors similarly complained about that property.[50] This Court's own precedent reveals community opposition is considered under the reasonableness analysis.

The Court was also persuaded by *Groome Resources, Ltd., v. Parish of Jefferson,* in which the Eastern District cited several reasons to deem the requested accommodation reasonable and necessary, including the fact that "[t]he other homes operated by Groome have been well received by their residential neighbors."[51] In the same paragraph of this opinion, the Eastern District considered that other permitted uses in the zoning district would cause more congestion and traffic problems than the group home and noted few

---

[46] Rec. Doc. 63-1, pp. 3–6.
[47] *Id*. at pp. 3–4.
[48] *Id.* (citing as an example *Oxford House, Inc. v. Baton Rouge*, 932 F. Supp.2d 683, 692–93 (M.D. La 2013)).
[49] *Oxford House, Inc.*, 932 F. Supp.2d at 692–93.
[50] *Id.* at 693.
[51] 52 F. Supp. 2d 721, 724 (E.D. La. 1999), *aff'd,* 234 F.3d 192 (5th Cir. 2000).

automobiles, if any, would routinely be parked at the group home.[52] Here, the Court considered these same factors to find that there was not a factual dispute regarding the group home's "low likelihood" of obstructing traffic flow.[53] In the instant motion, Plaintiffs represent that they do not "challenge the Court's determination" on that finding.[54] The case law suggests that the Court did not err when it considered community opposition to the Lettsworth Home. Plaintiffs find no issue in the Court's reasoning where it cites to the same case law and its analysis tilts in Plaintiffs' favor. The Court denies reconsideration.

Second, Plaintiffs argue that the Court improperly considered inadmissible evidence and evidence not put forth by Defendant.[55] Specifically, Plaintiffs take issue with the consideration of a Parish councilperson's testimony because it is inadmissible hearsay.[56] Plaintiffs contend that the Court credited the testimony of a councilperson who "proclaimed. . .the existing house [] would bring crime into the neighborhood, based on myths and hearsay, while ignoring the testimony of the police chief who refuted this rumor. . . ."[57] Whether the testimony is hearsay is not relevant in the summary judgment context. The Fifth Circuit holds that at the summary judgment stage, whether materials are admissible in their current form is not dispositive because "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'"[58] Statements that would technically constitute hearsay at the summary

---

[52] *Id.* at 724–25.
[53] Rec. Doc, 62, pp. 16–17.
[54] Rec. Doc. 63-1, p. 2, n.1.
[55] Rec. Doc. 63-1, p. 7.
[56] *Id.* at p. 8.
[57] *Id.*
[58] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis removed).

judgment stage can oftentimes be reduced to admissible form later by having the declarant testify to the matter at trial.

Nothing in the record suggests that the councilperson or the police chief are unavailable to testify at trial. The Court did not "credit" one form of testimony for another, but instead found disputed issues on a material fact.[59] Plaintiffs further contend that the Court erred by considering this testimony because Plaintiffs filed this evidence and Defendant did not file an opposition.[60] When deciding on cross motions for summary judgment, "[b]oth motions must be denied if the court finds that there is a genuine dispute of material fact."[61] The Court found a genuine dispute of material fact regarding community opposition, so both motions were denied. Thus, reconsideration is denied.

The Court amends its Ruling to correct one factual error. Plaintiffs are correct that the police chief—rather than Plaintiffs' counsel—testified that the Bayou Run Home experienced vehicle burglaries.[62] The Court amends its Ruling to correct this error but will not reconsider denying partial summary judgment.

Third, Plaintiffs argue that the Court should not have considered the group home's economic impact when completing the reasonableness analysis.[63] The Court did err by considering the group home's financial situation under this analysis. Instead, it should have considered whether there were any undue financial or administrative burdens on the Parish.[64] On summary judgment, Defendant did not present any evidence showing

---

[59] Plaintiffs reiterate that the issue of community opposition, or rather whether the accommodation would be well received by the community is an immaterial issue. Rec. Doc. 63-1, p. 9. For the reasons stated on pgs. 7–8 of this Ruling, the Court rejects this argument.
[60] Rec. Doc. 63-1, p. 9.
[61] Rec. Doc. 62, p. 10.
[62] Rec. Doc. 39-5, p. 10, Dep. Transcript, 10: 15–19.
[63] Rec. Doc. 63-1, p. 5.
[64] *See Oxford House, Inc.*, 932 F. Supp. 2d at 692 (the Court considers whether the accommodation would cause an undue financial or administrative burden on Baton Rouge).

that the accommodation would impose an undue financial burden or an administrative hardship on the Parish. However, Plaintiffs did not present contrary summary judgment evidence, and in the instant motion Plaintiffs rely on evidence that the Court will not consider.[65] Neither party presented arguments on summary judgment, so the Court should not have addressed this factor in its analysis.[66] The Court amends its Ruling to retract the consideration of economic impact. Absent this consideration, genuine issues of fact still exist. Therefore, the Court will not reconsider its Ruling denying partial summary judgment.[67]

Fourth, Plaintiffs request that the Court reconsider finding that the Lettsworth Home differed from the permitted uses and structures allowed in the district.[68] The Court was persuaded by the undisputed fact that the district in question is "overwhelmingly agricultural."[69] Plaintiffs rely on analogous facts found in *Groome* and *Oxford House* but ignore the facts in those cases that the Court found distinct from the facts herein.[70]

---

[65] *See* Rec. Doc. 63-1, p. 5 (stating that "[i]n light of the Parish's admissions in deposition, *inter alia*, Plaintiffs are entitled to summary judgment on reasonableness"), *but see id.* at p. 6, n.4 (stating that the admissions "come from the transcript of the Parish's Rule 30(b)(6) deposition that was part of Plaintiffs' supplemental motion and statement of facts that make this argument."). As further explained on pgs. 4–5 of this Ruling, the Court will not consider the materials submitted with the supplemental motion for the purposes of reconsideration.

[66] *See Oxford House, Inc.*, 932 F. Supp. 2d at 692 (The Court concluding it will not address the economic impact factor because neither party argued that the group home accommodation would impose an undue financial burden or an administrative hardship on Baton Rouge, nor did the Court find anything in the record to support that finding.).

[67] In subsequent paragraphs, Plaintiffs reiterate that the Court should not have considered the economic impact on the group home in its reasonableness analysis. Rec. Doc. 63-1, pp. 13–14. To clarify, Plaintiffs are correct that the Court should not have considered the economic impact on the group home but should have considered the economic impact on the Parish. However, as explained above, neither party submitted evidence properly before the Court on this issue.

[68] Rec. Doc. 63-1, pp. 10–12.

[69] Rec. Doc. 62, p. 18.

[70] *Id.* at pp. 17–18.

Plaintiffs seek to rehash evidence; this is not the purpose of a motion for reconsideration.[71] Reconsideration is denied.[72]

### 2. Necessity for the Accommodation

Plaintiffs argue that they are entitled to summary judgment on the necessity prong because the Court found no genuine issue of fact regarding the Lettsworth Home's financial viability.[73] The Court disagrees. A dispute exists regarding whether the accommodation is "essential."[74] The group homes owner, Cornell Dukes ("Dukes"), testified that the Bayou Run Home, which sits in the Parish as a non-conforming use, had been operating under capacity for the past year.[75] This "raise[d] a question of the necessity for a second group home in the parish."[76] Thus, the Court found a reasonable jury, as opposed to this Court, should have the opportunity to consider these facts.[77] Plaintiffs ignore this finding in their instant motion and instead focus on Defendant's lack of opposition to partial summary judgment.[78] As the Court explained above, when deciding on cross motions for summary judgment, "[b]oth motions must be denied if the court finds that there is a genuine dispute of material fact."[79] The Court found that the

---

[71] *See Allen*, 721 F. App'x at 328 (quoting *Templet,* 367 F.3d at 479) (explaining that a motion for reconsideration "'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'").

[72] In its Opposition to reconsideration, Defendant argues that the property is not in a "residential community." Rec. Doc. 64, p. 5. While the Court agrees, the Court asserts that it did not rely on the Defendant's Opposition for this finding because Defendant's argument is primarily based on Plaintiffs' arguments in their motion for preliminary injunction. *Id*. While the Court considered Plaintiffs' Motion for Preliminary Injunction in the same ruling as the cross-motions for summary judgment, the Court clarified it would not rely on evidence offered with the Partial Motion for Summary Judgment when it analyzed Plaintiffs' Motion for Preliminary Injunction. Rec. Doc. 62, p. 5. Accordingly, the Court will not rely on arguments found in the Motion for Preliminary Injunction to decide whether the Motion for Partial Summary Judgment should be reconsidered.

[73] Rec. Doc. 63-1, p. 13.
[74] Rec. Doc. 62, p. 20.
[75] *Id*.
[76] *Id*.
[77] *Id*.
[78] Rec. Doc. 63-1, pp. 13–14.
[79] Rec. Doc. 62, p. 10.

facts aforementioned presented a genuine dispute of material fact with respect to whether the group home is essential. Reconsideration is denied.

In addition, Plaintiffs contend that the Court "committed legal error [] by using an incorrect standard to determine necessity" by considering the fact that the Bayou Run Home does not necessarily house children from the Parish.[80] Defendant counters that Plaintiffs intend to have the Court ignore Plaintiffs' prior claim that absent an accommodation the children of Pointe Coupee Parish will be denied a place to live in their community.[81] Defendant is correct. Plaintiffs claim the following in their Motion for Partial Summary Judgment:

- "If Plaintiffs are unable to begin operating, the disabled children of Pointe Coupee Parish will be denied an equal opportunity to enjoy the type of housing and services that the State has found effective and necessary for them."
- "Plaintiffs' requested accommodations are necessary because establishment of group homes within Pointe Coupee Parish will allow children who need such services to remain near their communities, rather than being placed in distant parishes or other states."
- "[A]llowing Pointe Coupee Parish children with disabilities to live and receive services in their communities benefits Pointe Coupee Parish and its residents, as well."[82]

The Court found conflicting facts on this issue. Defendant argued that Plaintiffs' claims were disingenuous because (1) the Bayou Run Home had space available for tenants and (2) Parish children were not guaranteed residency in the Lettsworth Home because Plaintiffs anticipate being assigned children from "all across the state," citing Dukes' testimony.[83] Presumably because the Court did not find in Plaintiffs' favor, they move the Court to ignore their previous arguments; the Court declines. Plaintiffs also

---

[80] Rec. Doc. 63-1, p. 17.
[81] Rec. Doc. 64, p. 4.
[82] Rec. Doc. 38-1, pp. 14–15.
[83] Rec. Doc. 35-1, pp. 12–13.

claim the Court erred by "looking through the record and finding inadmissible evidence to negate the necessity prong."[84] The Court wholly rejects this argument. When Defendant argued that the "group home is intended to accept the assignment of children 'from all across the state[]," Defendant cited Dukes' deposition.[85] The Court reviewed the deposition transcript, in which Dukes made this statement,[86] and he testified as follows:

> Q: Are they all kids here from Pointe Coupee Parish?
>
> A: Not—not that I know of. Not that I am aware of. We get kids from all across the state. We serve the state, just not Pointe Coupee. This is a state license that I am going after, not a parish license.[87]
>
> ---
>
> Q: So correct me if I am misunderstanding. My understanding from your prior testimony was that the State decides who they send to you.
>
> A: Correct.[88]

Plaintiffs suggest that the Court's review was limited to the single line cited by Defendant, even though Defendant refers the Court to Dukes' deposition transcript, and the above testimony is in the same exhibit.[89] Certainly, the Court is not obligated to seek out material issues of fact *sua sponte*, but it is also not obligated to consider evidence in a vacuum.

Finally, Plaintiffs argument that Dukes "does not have firsthand knowledge" of whether residents have a choice in where they live is puzzling.[90] Dukes testified that he

---

[84] Rec. Doc. 63-1, p. 18.
[85] Rec. Doc. 35-1, p. 13.
[86] Rec. Doc. 35-8, p. 2, Dep. Transcript, 86:15.
[87] Rec. Doc 35-8, p. 2, Dep. Transcript, 86:12–18.
[88] Rec. Doc. 35-8, p. 3, Dep. Transcript, 108: 9–12.
[89] Rec. Doc. 35-8.
[90] Rec. Doc. 63-1, p. 19.

owns the plaintiff-companies in this matter, and states, "I am the plaintiff. All of these companies are owned by aliases other than myself."[91] Whether or not Dukes is the "true plaintiff," Plaintiffs do not dispute that Dukes owns the companies. Thus, at the very least, his purported "firsthand knowledge" of the group home's operations is an inquiry for the jury to consider. When reviewing the evidentiary record, a genuine dispute of material fact exists. Reconsideration is denied.

### 3. Reasonable Accommodation Requests for Delta Place and Russell Lane Group Homes

Plaintiffs request that the Court reconsider its Ruling to address two additional group homes, the Delta Place Home and the Russell Lane Home.[92] Plaintiffs also ask the Court to find that Defendant waived its right to seek summary judgment dismissal on issues relating to these additional homes because Defendant did not address the additional group homes in its dispositive motion.[93] Plaintiffs explain that they are seeking the same accommodation for three homes but only sought a variance request for the Lettsworth Home.[94] On summary judgment, Plaintiffs argued that they were not required to seek requests on these additional homes because "it would have been futile to do so."[95] The only controlling law Plaintiffs rely on is *Oxford House*, which is distinguishable. In *Oxford House*, the plaintiff sought an accommodation request for two homes from the City of Baton Rouge.[96] The city's accommodation procedure was unclear; therefore, the plaintiff wrote letters to the defendant explaining its accommodation request for one group

---

[91] Rec. Doc. 35-14, p. 2, Dep. Transcript, 65: 14–16.
[92] Rec. Doc. 63-1, p. 20.
[93] *Id*.
[94] Rec. Doc. 38-1, p. 8.
[95] *Id*.
[96] *Oxford House, Inc*., 932 F. Supp. 2d at 686.

home.[97] Per the city's instructions, the plaintiff completed an "A-9 form" for the accommodation.[98] The city denied the accommodation request and denied the plaintiff's pleas for reconsideration.[99] The plaintiff did not complete an A-9 form for the second group home but did provide the defendant with the same letters explaining the accommodation as it did for the first group home.[100] Notwithstanding the plaintiff's failure to complete this second A-9 form, the Court found that the city refused the reasonable accommodation requests for both homes because "it would have been futile" to complete another A-9 form considering the previous denied request.[101] In *Oxford House*, even absent a formal application, the defendant still had notice of plaintiff's accommodation request for the second group home. Here, the summary judgment record is void of any evidence that the Plaintiffs would seek zoning accommodations for the Russell Lane and Delta Place Homes. Therefore, although Plaintiff represents the accommodations would be identical to the Lettsworth Home,[102] which is similar to *Oxford House*, Plaintiff's notice, or lack thereof, to Defendant is differentiated from this Court's precedent. Only the Lettsworth Home is before the Court and reconsideration is denied.

In summary, Plaintiffs are not entitled to summary judgment on the reasonableness or necessity prong of the reasonable accommodation test.[103] The motion to reconsider partial summary judgment is denied.

---

[97] *Id.* at 691.
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *See* 38-1, p. 8 (explaining that variance request seeking to expand the definition of "family" in the Zoning Ordinance "matches exactly the change Plaintiffs need in order to open Delta Place and Russell Lane.").
[103] The Court rejects Plaintiffs' argument contending that the "Court erred when it said congregate living was an acceptable alternative to Rural Agricultural." Rec. Doc. 63-1, p. 14. First, this statement misconstrues the Ruling. The Court did not conclude that congregate housing was an acceptable alternative in its entirety. The Court stated that "from a financial standpoint," congregate living "may be" a reasonable

## III.    CONCLUSION

For the aforementioned reasons, the Motion for Leave to File Supplemental Dispositive Motion and Statement of Material Facts[104] is hereby **DENIED**. The Motion for Leave to File Two Exhibits Conventionally[105] is hereby **DENIED**. The Motion for Reconsideration[106] is hereby **DENIED**. The Court amends its prior Ruling[107] as set forth herein however, reconsideration is **DENIED** in all other respects. The parties are hereby referred to the Magistrate Judge for a scheduling order.[108]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this __18th__ day of September, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

accommodation. Rec. Doc. 62, p. 19. The Court did not intend for the parties to interpret this as the Court concluding that congregate living was an acceptable alternative as there are other factors beyond financial concerns to consider. Second, the subsequent arguments on this point, and the argument that the Parish's alternative will illegally perpetuate segregation will not be considered by the Court. Plaintiffs rely on evidence the Court stated it will not consider for the purposes of reconsideration. *See* pgs. 4–5 of this Ruling. Reconsideration is denied.
[104] Rec. Doc. 50.
[105] Rec. Doc. 60.
[106] Rec. Doc. 63.
[107] Rec. Doc. 62.
[108] The bench trial originally set for September 19, 2023 was continued without date. Rec. Doc. 36.